IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:18-cv-1577

SVETLANA BASHKINA;

    Plaintiff,

v.

ELAVON, INC. & LAKESHORE STAFFING, INC.;

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Svetlana Bashkina respectfully alleges for her Complaint and Jury Demand as follows:

### I. INTRODUCTION

Defendant Elavon, hired Ms. Bashkina through Lakeshore Talent in 2015. Ms. Bashkina worked as a dedicated and successful employee until Elavon wrongfully terminated Ms. Bashkina on March 2, 2016. Beginning in June of 2015, Ms. Bashkina became the victim of repeated harassment based on her gender at the hands of one of her supervisors, Thomas Scott Boyd. Ms. Bashkina informed Lakeshore Talent of this harassment. Defendant Lakeshore ignored Ms. Bashkina's complaints. Ms. Bashkina continued to suffer unlawful harassment. Elavaon and Lakeshore's repeated harassment created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended. Ms. Bashkina stood up for herself and resisted this unlawful harassment. When Ms. Bashkina did so and her harasser was promoted to the Director

of Operations at Elavon, Elavon wrongfully terminated Ms. Bashkina in a retaliation for Ms. Bashkina's exercise of her rights under Title VII of the Civil Rights Act of 1964. Through the unlawful conduct of its employees, Lakeshore Staffing and Elavon discriminated against Ms. Bashkina because of her sex, created a hostile work environment, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as amended.

## II. PARTIES, JURISDICTION, AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq*. Ms. Bashkina's claim for attorneys' fees and costs is conferred by the enforcement provisions of Title VII, 42 U.S.C. § 2000e-5(g)(2)(b)(i).

2. Jurisdiction is also invoked pursuant to 28 U.S.C. § 1332, as Plaintiff is a citizen of the State of Colorado and Defendants are citizens of Delaware and Georgia, and Plaintiff's claimed damages exceed $75,000.00.

3. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the state of Colorado, and at the time of the events giving rise to this litigation, all of the parties resided in Colorado.

4. Plaintiff Svetlana Bashkina was an employee of Defendant Elavon, hired through Lakeshore Staffing, from April 13, 2015, until her termination on March 2, 2016. At all relevant times hereto, Ms. Bashkina was a citizen of the United States of America and a resident of and domiciled in the State of Colorado.

5. Defendant Lakeshore Staffing is a corporation organized under the laws of the State of Delaware and, at all times relevant hereto, operating in the State of

Colorado at 1875 Lawrence Street, Suite 1100, in Denver, Colorado.  At all times relevant hereto, Defendant has been an "employer" within the meaning of Title VII, as amended.

6.      Defendant Elavon is a corporation organized under the laws of the State of Georgia and, at all times relevant hereto, operating in the State of Colorado at 79 Inverness East, in Englewood, Colorado.  At all times relevant hereto, Defendant has been an "employer" within the meaning of Title VII, as amended.

### III. PROCEDURAL REQUIREMENTS

7.      On March 4, 2016, Ms. Bashkina submitted two Charges of Discrimination, one against each defendant, with the Equal Employment Opportunity Commission ("EEOC") in Denver, Colorado. The charges were filed within 180 days of the occurrence of one or more of the alleged unlawful employment practices in violation of 42 U.S.C. §§ 2000, *et seq*.

8.      On March 27, 2018, EEOC issued Ms. Bashkina two Notices of Right to Sue, indicating that Ms. Bashkina's efforts towards conciliation had been unsuccessful, against both defendants. Ms. Bashkina is filing this complaint within 90 days of receiving the Notices of Right to Sue.

### IV. FACTUAL ALLEGATIONS

#### Background

9.      Elavon hired Ms. Bashkina, through Lakeshore, as a temporary employee.

10.     Ms. Bashkina started employment as a Migration Coordinator on April 13, 2015.

11. Throughout her employment, Ms. Bashkina was responsible for designing the flow process utilized to transition companies to utilizing chip technology in credit card processing.

12. Ms. Bashkina's direct supervisor was Jeffery Wiggins.

### Gender-based Harassment by Thomas Scott Boyd

13. Beginning in June 2015, Thomas Scott Boyd, Ms. Bashkina's alternate supervisor, engaged in harassing, offensive, discriminative, and inappropriate conduct against Ms. Bashkina.

14. When Mr. Wiggins was unavailable, Ms. Bashkina was instructed to report to Mr. Boyd.

15. When Mr. Wiggins was unavailable and/or traveling, Mr. Boyd was Ms. Bashkina's sole supervisor.

16. Mr. Wiggins was often unavailable and/or traveling.

17. When Ms. Bashkina was first hired, Elavon had a hiring freeze in place.

18. Throughout the course of Ms. Bashkina's employment, Mr. Boyd continually told Ms. Bashkina she would be a good hire once the regular full-time positions were available.

19. These promises continued even after the hiring freeze was lifted and other individuals were hired for the promised positions.

20. When two regular positions became available, two men from outside the company were hired for those positions, though there were six female temporary employees working for Elavon at the time.

21. On September 2, 2015, Mr. Boyd told Ms. Bashkina that she would be moved directly under his supervision in the future.

22. In June of 2015, Mr. Wiggins was out of town, forcing Ms. Bashkina to contact Mr. Boyd to report a personal issue.

23. Because Ms. Bashkina had no other option but to contact Mr. Boyd using her personal phone, Mr. Boyd gained access to Ms. Bashkina's personal number.

24. Mr. Boyd immediately began using Ms. Bashkina's personal phone number to contact Ms. Bashkina.

25. Mr. Boyd continually sent Ms. Bashkina harassing and inappropriate text messages to her personal phone from June 2015 through January 2016.

26. On August 27, September 9, September 10, September 11, September 12, September 23, September 25, and December 31, 2015, Mr. Boyd sent Ms. Bashkina text messages commenting on her physical appearance at the office.

27. On August 27, September 9, September 10, September 11, and September 12, 2015, Mr. Boyd sent Ms. Bashkina text messages saying he had a crush on her or liked her.

28. On August 27, September 9, September 10, September 11, September 12, September 23, September 24, and September 25, 2015, Mr. Boyd sent Ms. Bashkina text messages asking her to go on dates with him.

29. On September 14, September 23, September 24, September 25, September 26, and September 28, 2015, Mr. Boyd sent Ms. Bashkina text messages asking Ms. Bashkina to be his girlfriend and/or referring to Ms. Bashkina as his girlfriend.

30. On September 10, September 14, and September 23, 2015, Mr. Boyd sent Ms. Bashkina text messages speaking of the two getting married.

31. On September 14 and September 25, 2015, Mr. Boyd sent text messages to Ms. Bashkina saying he was going to get a divorce so that Ms. Bashkina would be with him.

32. On September 10, September 11, September 14, September 23, September 24, and September 25, 2015, Mr. Boyd sent Ms. Bashkina text messages speaking about wanting to kiss her.

33. On September 14, 2015, Mr. Boyd sent Ms. Bashkina text messages asking if he could kiss her and how she would respond if he kissed her. When Ms. Bashkina responded that she would "be furious," Mr. Boyd stated Ms. Bashkina would "have to stop" him and that he was still going to try to kiss her.

34. On September 23, 2015, Ms. Bashkina told Mr. Boyd if he tried to kiss her she would slap him. Mr. Boyd responded by saying "I guess I'm getting slapped today."

35. On September 14, September 23, September 24, September 25, September 26, September 28, and October 9, 2015, Mr. Boyd sent text messages to Ms. Bashkina telling her he loves her.

36. On September 14 and September 25, 2015, Mr. Boyd sent text messages to Ms. Bashkina telling her he was going to reserve a hotel room for the two of them.

37. On September 14, September 24, September 25, and September 26, 2015, Mr. Boyd sent text messages to Ms. Bashkina telling Ms. Bashkina that he wanted to have sexual intercourse with her.

38. Between June 2015 and January 2016, Mr. Boyd admits numerous times that he knows Ms. Bashkina wishes to be only friends.

39. On September 23, 2015, Mr. Boyd sent text messages to Ms. Bashkina saying he knows she only wants to be his friend, that he will stop trying to be her boyfriend, and that he will just be her buddy.

40. On September 24, 2015, Mr. Boyd sent text messages to Ms. Bashkina saying he will do his best to do as she wishes and stop trying to be more than just friends; further stating that he knows she doesn't feel the same way about him as he feels about her.

41. Intermittently with the inappropriate text messages, Mr. Boyd would send Ms. Bashkina text messages regarding work and her position at Elavon.

42. On September 2, 2015, Mr. Boyd sent a text message to Ms. Bashkina speaking about hiring four people.

43. On September 10, 2015, Mr. Boyd sent a text message to Ms. Bashkina telling her not the worry about her job with the new people because they could never replace her.

44. On September 25, 2015, Mr. Boyd sent text messages to Ms. Bashkina saying Ms. Bashkina may be able to convince Mr. Boyd to hire Ms. Bashkina's friend. Only to follow it with, "then again, your morals may prevent the kind of convincing I am talking about."

45. Between June 2015 and January 2016, Mr. Boyd also left Ms. Bashkina harassing and inappropriate voicemail messages.

46. On September 26, 2015, at 1:20am, Mr. Boyd called Ms. Bashkina and left her a voicemail saying he wanted to talk to her and he loved her.

47. On September 26, 2015, at 1:30am, Mr. Boyd called Ms. Bashkina again and left her a voicemail of him breathing heavily and saying he was thinking about her, he wanted her, and he loved her.

48. The inappropriate text messages and voicemails from her alternate supervisor, someone who would speak with her about the possibility of being hired permanently, made Ms. Bashkina feel extremely pressured and uncomfortable.

49. Throughout Ms. Bashkina's time at Elavon, Mr. Boyd would frequently walk by her office, look for her, and come to speak with her.

50. Mr. Boyd's behavior made Ms. Bashkina extremely uncomfortable and harassed.

51. Mr. Boyd frequented Ms. Bashkina's office so often that Ms. Bashkina's assistant, Gloria Diaz, noticed and asked Ms. Bashkina about Mr. Boyd's behavior.

52. Ms. Bashkina reported this harassment to Lakeshore, to no avail. Lakeshore ignored Ms. Bashkina's concerns.

53. In February 22, 2016, Defendant Elavon announced that Mr. Wiggins, the Director of Operations would be stepping down.

54. Mr. Boyd was being promoted to the Director of Operations in Mr. Wiggins' place.

55. March 2, 2016 was Mr. Wiggins' final day with Elavon and the day Mr. Boyd took over the Director of Operations job.

56. The same day Mr. Boyd Elavon promoted Mr. Boyd, on March 2, 2016, Elavon terminated Ms. Bashkina's employment.

57. Elavon told Ms. Bashkina she was fired because of her work performance.

58. Ms. Bashkina has never received a bad review or been reprimanded by Elavon.

59. During her time at Elavon, Ms. Bashkina received an increase in wages, increased responsibilities, and an assistant.

60. Lakeshore told Ms. Bashkina she was fired because her assignment was over.

61. Upon the termination of Ms. Bashkina's employment, Elavon assigned Ms. Bashkina's tasks and responsibilities to Ms. Bashkina's assistant, Gloria Diaz.

62. Following her termination from Elavon, Lakeshore refused to place Ms. Bashkina in another job assignment.

## V. FIRST CLAIM FOR RELIEF

**42 U.S.C. §§ 2000e, *et seq*., Title VII of the Civil Rights Act of 1964, as amended
Hostile Work Environment**

63. Ms. Bashkina hereby incorporates all of the paragraphs of this Complaint as though fully set forth herein.

64. Elaon and Lakshore subjected Ms. Bashkina to a hostile work environment through Mr. Boyd's abusive and offensive conduct.

65. Mr. Boyd's behavior was subjectively and objectively offensive, severe, and pervasive, and it altered the conditions of Ms. Bashkina's employment.

66. As a result of Mr. Boyd's behavior, Ms. Bashkina felt uncomfortable, pressured, and personally offended. This disrupted her work life and significantly disrupted her personal life.

67. Ms. Bashkina informed Mr. Boyd that she was not interested in the harassment to which he subjected her.

68. Ms. Bashkina informed Lakeshore of the harassment that was taking place.

69. Both Defendants failed to stop this harassment.

70. Ms. Bashkina's efforts at conciliation were unsuccessful.

71. These acts or omissions by Defendants caused the hostile work environment experienced by Ms. Bashkina.

72. These acts or omissions by Defendants also ratified the abusive and offensive conduct of Mr. Boyd towards Ms. Bashkina, based purely upon Ms. Bashkina's sex.

## VI. SECOND CLAIM FOR RELIEF

**Violation of 42 U.S.C. § 2000e-2(a)(1) – Gender and Race Discrimination in Employment**

73. Ms. Bashkina hereby incorporates all of the paragraphs of this Complaint as though fully set forth herein.

74. Ms. Bashkina, as a female in the workplace, is a member of a class of citizens protected by Title VII.

75. At all pertinent times, Ms. Bashkina performed the functions of her job competently and was qualified for her position with Elavon, through Lakeshore Talent.

76. Ms. Bashkina received a wage increase, positive feedback, and increased responsibilities during her time at Elavon.

77. Defendants, specifically through Mr. Boyd, treated Ms. Bashkina less favorably than her male counterparts, promising her future positions but never hiring her.

78. Ms. Bashkina was forced to endure harassing and sexually explicit text messages and voicemails on her personal phone from Mr. Boyd, her alternate supervisor, while she was at work and in her personal life.

79. Defendants, through their employee, engaged in this discriminatory conduct with malice or reckless indifference to Ms. Bashkina's federally protected rights under Title VII.

80. The gender-related employment practices and other acts or omissions of Defendants and their agents, supervisors, and employees reflect Defendants' reckless and willful and wanton indifference or hostility to Ms. Bashkina's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; lost employment opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; pain and suffering; and Ms. Bashkina's attorneys' fees in bringing this action.

## VII. THIRD CLAIM FOR RELIEF

**Violation of Colo. Rev. Stat. 24-34-301, *et seq*., – Colorado Anti-Discrimination Act**

81. Ms. Bashkina hereby incorporates all of the paragraphs of this Complaint as though fully set forth herein.

82. Ms. Bashkina, as a female in the workplace, is a member of a class of citizens protected by Colo. Rev. Stat. 24-34-301, *et seq*.

83. At all pertinent times, Ms. Bashkina performed the functions of her job competently and was qualified for her position with Elavon, through Lakeshore.

84. Ms. Bashkina received a wage increase, positive feedback, and increased responsibilities during her time at Elavon.

85. Defendants, specifically through Elavon's employee, Mr. Boyd, treated Ms. Bashkina less favorably than her male counterparts, promising her future positions but never hiring her.

86. Ms. Bashkina was forced to endure harassing and sexually explicit text messages and voicemails on her personal phone from Mr. Boyd, her alternate supervisor, while she was at work and in her personal life.

87. Defendants, through their employee, engaged in this discriminatory conduct with malice or reckless indifference to Ms. Bashkina's protected rights under the Colorado Anti-Discrimination Act.

88. Defendants then retaliated against Ms. Bashkina for Ms. Bashkina's exercise of her rights under Colo. Rev. Stat. 24-34-301, *et seq*. by terminating Ms. Bashkina's employment, and Lakeshore's refusal to provide Ms. Bashkina with other employment.

89. The gender-related employment practices and other acts or omissions of Defendants and their agents, supervisors, and employees reflect Defendants' reckless and willful and wanton indifference or hostility to Ms. Bashkina's protected employment rights and status, directly and proximately resulting in such damages as may be proven

at trial, including but not limited to lost income and benefits; lost employment opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; pain and suffering; and Ms. Bashkina's attorneys' fees in bringing this action.

## VIII. FOURTH CLAIM FOR RELIEF

### Violation of 42 U.S.C. § 2000e-3(a) – Retaliation

90. Elavon termainated Ms. Bashkina's employment in retaliation for Ms. Bashkina's refusal to submit to conduct that violated Title VII, and Ms. Bashkina's defense of herself against repeated incidents of harassment and discrimination which created a hostile work environment.

91. Ms. Bashkina was terminated the same day Mr. Boyd was promoted to the Director of Operations.

92. Throughout her employment with Elavon, Ms. Bashkina's performance was consistently competent and satisfactory.

93. Though Lakeshore claimed Ms. Bashkina's assignment was over, her job duties were placed upon another employee.

94. Following her employment with Elavon, Lakeshore declined to place Ms. Bashkina with other employers.

95. The only reasonable explanation for her dismissal by Defendants is retaliation.

96. The Defendants engaged in this conduct with malice or reckless indifference to Ms. Bashkina's federally protected rights within the meaning of Title VII.

**97.** The retaliatory and wrongful discharge of Ms. Bashkina, and other acts or omissions of the Defendants, their agents, supervisors, and employees reflect Defendants' reckless and willful and wanton indifference or hostility to Ms. Bashkina's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; lost employment opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; pain and suffering; and Ms. Bashkina's attorneys' fees in bringing this action.

## CONCLUSION AND PRAYER

WHEREFORE, Ms. Bashkina requests that the Court enter judgment for the following relief:

a. All declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages as established at trial;

c. Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

d. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

e. Liquidated damages for all claims as allowed by law;

f. Issuance of an Order mandating appropriate equitable relief, including but not limited to:

1. A formal written apology from Defendants to Ms. Bashkina;

  2.  The imposition of policy changes designed to avoid future similar misconduct by the Defendants;

  3.  Mandatory training designed to avoid future similar misconduct by Defendants; and

  4.  Imposition of disciplinary action against appropriate employees of Defendants;

g. Pre-judgment and post-judgment interest at the highest lawful rate;

h. Attorneys' fees and costs; and

i. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 23rd day of June, 2018.

               OLSON LAW FIRM LLC

               *s/ Sean T. Olson*
               _____
               Sean T. Olson
               2701 Lawrence Street, Suite 118
               Denver, CO 80205
               (303) 586-7297 (t)
               (303) 586-7298 (f)
               sean@olsonlawfirm.com

               ATTORNEYS FOR PLAINTIFF